921 So.2d 372 (2005)
Ronald W. JURNEY, Appellant
v.
Missie Slay JURNEY, Appellee.
No. 2004-CA-00681-COA.
Court of Appeals of Mississippi.
August 16, 2005.
Rehearing Denied November 29, 2005.
Certiorari Denied February 16, 2006.
*373 Sharon Patterson Thibodeaux, Brandon, attorney for appellant.
John Robert White, Jackson, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Ronald Jurney and Missie Slay Jurney were divorced in August 1998. Thereafter, Ronald filed a petition for contempt, alleging that Missie had failed to abide by certain terms of the divorce decree. Ronald specifically alleged that Missie failed to maintain a wholesome environment for the parties' two minor sons, and failed to pay certain medical expenses in accordance with the judgment of divorce. The chancellor entered an order declining to find Missie in contempt and ordered Ronald to pay Missie's attorney's fees. On appeal, Ronald contends that the chancellor erred in failing to find Missie in contempt of the divorce decree and in awarding Missie attorney's fees. Ronald further contends that Missie came into court with unclean *374 hands, and as a result the chancellor erred in awarding her relief.
¶ 2. We find merit in Ronald's argument regarding the chancellor's award of attorney's fees to Missie. Therefore, we reverse and render the chancellor's decision on this issue but affirm the chancellor's decision not finding Missie in contempt.

FACTS
¶ 3. In 1998, Ronald and Missie were granted an irreconcilable differences divorce. Pursuant to the child custody and property settlement agreement incorporated into the judgment of divorce, Missie was granted custody of the parties' two minor sons, and Ronald was granted reasonable visitation. The divorce decree further provided that the parties maintain a wholesome environment for the minor children and ordered each party to pay one-half of the children's medical expenses.
¶ 4. In February 2003, Ronald filed a petition for contempt against Missie, alleging (1) that Missie had violated the provision of the divorce decree which prohibits the parties from subjecting the minor children to an unwholesome environment, and (2) that Missie had refused to pay her portion of a medical expense for the parties' minor children. The amount was $105 and was owed to Horizons Credit LLCC. Ronald also sought custody of both children, and alternatively, petitioned the court for a reduction in his child support obligation and for a modification of the decree's visitation provision in the event the chancellor failed to award him custody. Ronald further requested an award of attorney's fees and court costs.
¶ 5. In response to the petition, Missie filed an answer and counterclaim seeking an increase in child support payments, and requesting an award of attorney's fees.
¶ 6. After a hearing on the issues presented, the chancellor refused to find Missie in contempt of the divorce decree and granted her request for an increase in child support. The chancellor also awarded Missie $6,936.46 in attorney's fees.[1] Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 7. "[This Court's] scope of review in domestic relations matters is limited." Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997). "[We] will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Id. (quoting Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994)). "In other words, on appeal [we] are required to respect the findings of fact by the chancellor [which are] supported by credible evidence and not manifestly wrong." Id.

(1) Contempt
¶ 8. In his first two assignments of error, Ronald argues that the chancellor erred in declining to find Missie in contempt of the divorce decree. Ronald contends that the chancellor should have found Missie in contempt due to her failure to pay $105 in medical expenses and for failing to provide a wholesome living environment for the parties' children. For the sake of brevity, we will discuss both issues together.
¶ 9. During the hearing, Ronald presented undisputed evidence that at the time of the filing of his contempt action, Missie *375 had not paid her share of the medical expenses despite repeated requests from him to do so. Ronald also testified that Missie had subjected the children to an immoral environment by living with a man with whom she was romantically involved. Missie admitted that she lived with her children, for a little more than two months, in the home of a man with whom she was romantically involved. She explained that she initially moved out of her home because of mold problems. Her insurance company paid for her to move into an apartment. However, she made several moves while waiting on the house to be repaired. One of the moves was to the home of her male friend. Missie contends that because she paid her share of the medical expense two months prior to trial and changed her living arrangements seven months prior to the date of the trial, any alleged contempt had been cured before the hearing. At the conclusion of the hearing, the chancellor did not determine whether Missie had violated either of the two provisions of the judgment of divorce in question. However, the chancellor declined to find Missie in contempt
¶ 10. We give deference to the chancellor's decision. It is well-settled law that "`[c]ontempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than [this Court].'" Varner v. Varner, 666 So.2d 493, 496 (Miss.1995) (quoting Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994)). Here, the chancellor was clearly in a position to observe the demeanor of the parties and assess their credibility. Evidently, after hearing testimony from both parties and considering the evidence, the chancellor was not persuaded that Missie had willfully violated the divorce decree. Accordingly, we decline to disturb the chancellor's exercise of discretion on this issue.

(2) Attorney's Fees
¶ 11. Ronald next challenges the chancellor's award of attorney's fees to Missie. In support of his argument, he relies heavily on Smith v. Smith, 545 So.2d 725 (Miss.1989). In Smith, a chancellor declined to find the appellant's ex-wife in contempt and awarded her $300 in attorney's fees even though she admittedly failed to comply with the divorce decree. Id. at 726-27. On appeal, the Mississippi Supreme Court affirmed the chancellor's decision not to hold the ex-wife in contempt but reversed and rendered the award of attorney's fees. Id. at 728-29. In affirming the decision not to hold the ex-wife in contempt, the Court, however, noted:
Beverly Smith cannot, without sanction of the Court, decide when or how she will comply with court judgments. Further, Howard Smith is entitled to protection of the chancery court, and he is entitled to have the court's protection and help in enforcing the court's order, and this Court will require where necessary a trial court to see that its orders are followed. The trial court was lenient on Beverly Smith, but denied Howard Smith the use of appropriate petitions to exercise his court-granted and approved rights. Howard Smith too must have a remedy. Beverly Smith must comply with the chancery court's judgment. Id. at 728.
Similarly, in reversing the award of attorneys' fees, the Court stated:
Because there was no evidence presented to the Court in regard to attorney fees by Beverly Smith and because for this Court to approve attorney fees in this instance would be to reward Beverly Smith even though she admittedly *376 refused to carry out the order of the court, this Court will reverse as to attorney's fees. Id. at 729.
¶ 12. We find Smith helpful to the resolution of the issue before us. The judgment of divorce in the case at bar specifically provided that each party pay "one-half (½) of the deductible and one-half (½) of all doctor, hospital, optical, dental, orthodontic, psychological, psychiatric and prescription drug expenses of said minor children not covered by such insurance provision." The decree also provided that "neither of the parties do anything to subject said minor children to any illegal, dangerous, or unwholesome environment."
¶ 13. According to the evidence presented during the hearing, Missie did not pay her share of the medical expense owed to Horizon Credit until four months after Ronald had instituted his contempt action. Missie also acknowledged that she and the children began living with her boyfriend in December 2002 and stayed with him until the beginning of March 2003. As we have already stated, Ronald filed his contempt action in February 2003. That Missie may have come into compliance with the provisions of the judgment of divorce prior to the hearing does not vitiate the fact that Ronald's filing of the contempt action was no doubt the impetus that brought about her compliance. This Court has repeatedly held that an offending party cannot disregard a valid court order until contempt proceedings are filed, and prior to the hearing gain exoneration by full compliance. See Douglas v. Douglas, 766 So.2d 68, 72 (¶ 15) (Miss.Ct.App.2000).
¶ 14. While we recognize that a chancellor has discretion to award reasonable attorney's fees in contempt proceedings, the purpose of an award of attorney's fees is to compensate the prevailing party for losses sustained by reason of a defendant's noncompliance with the judicial decree. Hinds County Bd. of Supervisors v. Common Cause of Miss., 551 So.2d 107, 125 (Miss.1989) (citing Sebastian v. Texas Dept. Of Corr., 558 F.Supp. 507 (S.D.Tex. 1983)). Here, an award of attorney's fees would compensate Missie for her noncompliance with the divorce decree and punish Ronald for exercising his court-granted right to institute contempt proceedings in an effort to coerce Missie's compliance.
¶ 15. In defense of the chancellor's decision awarding her attorney's fees, Missie contends that the chancellor's finding  that Ronald's petition against Missie was a waste of resources and a hollow exercise  was tantamount to a finding that Ronald's claim was without substantial justification and frivolous in nature, thereby justifying an award of attorney's fees. Missie also contends that the record contains substantial evidence of her inability to pay her own attorney's fees, and additionally, requests an award on appeal of interests and damages.
¶ 16. Ronald argues that Missie failed to argue during the hearing that she lacked the financial ability to pay her own attorney's fees. We agree.[2] Moreover, Missie's testimony was very limited on the issue of attorney's fees as reflected by the following colloquy:
Q. Alright Missie, let me show you another document and ask you if you can identify this document. Do you recognize that document?
A. What is that?
Q. This is my attorney's bill to you.

*377 A. All right. Are you asking the Court to award you attorney's fees in this case?
A. Yes.
Q. All right. You've paid $2,500. Is that right?
A. Yes.
Q. And what do you currently owe?
A. [$]4,436
Q. And what is the total of your attorney's fees?
A. Almost [$]7,000. $6,936
¶ 17. We disagree with the chancellor that Ronald's petition was a waste of judicial resources and a hollow exercise. While it is unfortunate that Ronald had to resort to the judicial system to enforce two provisions of the judgment of divorce, that was and is his right. That the monetary amount sought to be collected was fairly insignificant in no way qualified or limited his right to seek the enforcing power of the court. It necessarily follows from our finding, that Ronald's petition was not a waste of judicial resources and a hollow exercise, that the award of attorney's fees against Ronald cannot be justified. From our review of the record and the judgment itself, it does not appear that the chancellor's award of attorney's fees to Missie was based on her inability to pay. On the issue of attorney's fees, the chancellor's judgment states: "Having found that Ron's position against Missie was a waste of resources and a hollow exercise, the Court assesses reasonable attorney's fees against Ron in the sum of $6,936.46...."
¶ 18. For the foregoing reasons, we find that the chancellor erred in his assessment of attorney's fees against Ronald; therefore, we reverse and render the award of attorney's fees. Likewise, for the reasons presented, we also deny Missie's request for attorney's fees and costs on appeal.
¶ 19. Finally, Ronald argues that the chancellor erred in awarding Missie relief because she came into court with unclean hands due to her failure to abide by the judgment of divorce. According to the record, Ronald failed to raise this argument during the hearing. As a result, he is therefore procedurally barred from now raising it for the first time on appeal. See Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992).
¶ 20. However, procedural bar aside, we find that this argument is lacking in merit. As previously noted, the chancellor declined to find Missie in contempt, thus implicit in this finding is that Missie did not have unclean hands at the time of the hearing. Moreover, the relief granted, a sixty-one dollar increase in monthly child support, was for the benefit of the parties' minor children. We see no reason to penalize the children. Accordingly, we find it unnecessary to address this issue further.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND RENDERED AS TO THE AWARD OF ATTORNEY'S FEES BUT IS AFFIRMED ON THE REMAINING ISSUES. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The record reflects that during the hearing, Ronald withdrew his claims for custody and for a reduction in child support, and the parties voluntarily entered into a new visitation agreement.
[2] Although on appeal Missie presents various arguments regarding her lack of ability to pay her attorney's fees, the record reflects that no such arguments were made in the court below, nor was there any testimony that Misisie lacked the financial ability to pay her own attorney's fees.