# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01190-COA

**RODNEY KIMBLE SR.**                                                                                    **APPELLANT**

**v.**

**STEPIDY McGHEE KIMBLE**                                                                            **APPELLEE**

DATE OF JUDGMENT:                07/27/2017
TRIAL JUDGE:                            HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:   TATE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      TERRENCE LADWAYNE HIGH
ATTORNEY FOR APPELLEE:       STEPIDY McGHEE KIMBLE (PRO SE)
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED - 06/18/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.     On July 27, 2017, the Tate County Chancery Court granted Stepidy Kimble a divorce from Rodney Kimble Sr. on the ground of adultery.  On appeal, Rodney challenges the chancellor's valuation of three marital assets during the equitable distribution of the marital estate.  Finding no error, we affirm.

## FACTS

¶2.     The parties married on August 1, 2003, and separated around January 11, 2016.  On January 20, 2016, Stepidy filed a complaint for divorce and other relief.  On July 27, 2017, the chancellor entered a decree granting Stepidy a divorce on the ground of adultery.  The chancellor awarded Stepidy sole legal and physical custody of the parties' two minor children

and granted Rodney visitation. The chancellor ordered Rodney to pay $541 a month in child support and one-half of the children's medical expenses. The chancellor also held Rodney in contempt for his failure to make child-support payments pursuant to a prior court order. The chancellor awarded Stepidy $6,920 for past-due child support and for attorney's fees related to the contempt claim.

¶3. Both parties provided the chancellor with their Uniform Chancery Court Rule 8.05 financial statements and testified at the hearing. At the time of the hearing, Stepidy worked at the Tate County Sheriff's Department, and Rodney was self-employed as a truck driver and operated his own trucking business. In his bench ruling at the conclusion of the hearing, the chancellor stated that he found Rodney's testimony "to be so fraught with misstatements, untruths, and statements made in an effort to conceal his assets and income that I give little credibility to any of his [Rodney's] testimony." After considering the testimony and evidence, the chancellor classified and valued the parties' marital assets as follows: (1) a 2005 Suzuki motorcycle valued at $5,250; (2) a 2002 Chevrolet Corvette valued at $6,375; (3) a 2003 Chevrolet Tahoe valued at $500; (4) a 2006 Volvo truck (Vehicle Identification Number (VIN) ending in 7121) valued at $20,000; (5) a 2006 Volvo truck (VIN ending in 3635) valued at $10,000; (6) a 2000 Freightliner conventional trailer valued at $8,500; (7) a 2007 Transcraft trailer valued at $12,000; (8) a 2012 specialized trailer valued at $35,000; (9) the portion of Stepidy's Public Employees' Retirement System (PERS) account accumulated during the marriage valued at $32,568.47; (10) the marital home with a net value of $22,303; and (11) household items valued at $2,500. Based on these findings, the

chancellor concluded the total value of the marital estate amounted to $154,996.47.

¶4.     After analyzing the *Ferguson*[1] factors, the chancellor determined that each party was entitled to fifty percent (or $77,498.24) of the marital assets.  The chancellor awarded Stepidy the following marital assets:  (1) her PERS account; (2) the marital home and all equity in the marital home; (3) the household items; (4) the 2005 Suzuki; and (5) the 2002 Corvette.  The chancellor awarded Rodney all other marital assets.  This distribution amounted to an award of $68,996.47 in marital assets to Stepidy and $86,000 in marital assets to Rodney.  To achieve an even split of the marital assets, the chancellor ordered Rodney to pay Stepidy $8,501.76.  Aggrieved by the chancellor's judgment, Rodney appeals. The sole issue he raises on appeal is whether the chancellor erroneously valued three of the parties' marital assets.

## DISCUSSION

¶5.     Rodney challenges the chancellor's valuation of the 2006 Volvo truck (VIN ending in 3635) at $10,000; the 2000 Freightliner conventional trailer at $8,500; and the 2007 Transcraft trailer at $12,000.  During the hearing, Rodney testified that the truck and two trailers at issue lacked monetary value because they either had not been driven or had not been operable for the past three to five years.  Rodney contends that the chancellor erred by failing to take into account his testimony regarding the lack of monetary value of these marital assets and that this alleged error resulted in an inequitable distribution of the marital estate.

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

¶6. "This Court applies a limited standard of review to a chancellor's division and distribution of marital property. We will affirm the chancellor's distribution of marital assets as long as it is supported by substantial credible evidence." *Baker v. Baker*, 250 So. 3d 502, 505 (¶6) (Miss. Ct. App. 2018) (citations and internal quotation marks omitted). Thus, when supported by substantial evidence, appellate courts will not disturb a chancellor's judgment unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *Williams v. Williams*, 264 So. 3d 722, 725 (¶5) (Miss. 2019). We review questions of law de novo. *Baker*, 250 So. 3d at 505 (¶6).

¶7. As this Court discussed in *Baker*:

> When dividing marital property, chancellors are directed to (1) classify the parties' assets as marital or separate; (2) determine the value of those assets; (3) divide the marital estate equitably based upon the factors set forth in *Ferguson*; and (4) consider the appropriateness of alimony if either party is left with a deficiency. Fairness is the prevailing guideline in marital division.

*Id.* at (¶7) (citations and quotation marks omitted).

¶8. "[T]he foundational step to make an equitable distribution of marital assets is to determine the value of those assets based on competent proof." *Dunaway v. Dunaway*, 749 So. 2d 1112, 1118 (¶14) (Miss. Ct. App. 1999) (citing *Ferguson*, 639 So. 2d at 929). "[I]t is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried." *Benton v. Benton*, 239 So. 3d 545, 548 (¶11) (Miss. Ct. App. 2018). When "a party fails to provide accurate information, or cooperate in the valuation of assets, the chancellor is entitled to proceed on the best information available." *Id.* The chancellor possesses sole authority to assess both the credibility and

4

weight of witness testimony. *Culumber v. Culumber*, 261 So. 3d 1142, 1150 (¶24) (Miss. Ct. App. 2018).

¶9.     Here, as previously discussed, both parties submitted Rule 8.05 financial disclosures to the chancellor and testified at the hearing. Rodney's initial Rule 8.05 disclosure, however, failed to reflect all his assets. During questioning by Stepidy's attorney, Rodney admitted that his Rule 8.05 financial statement failed to include three bank accounts and five vehicles and/or trailers that he owned. Stepidy's attorney also questioned Rodney about the values he listed for certain vehicles and the discrepancies between those values and the higher valuations reflected by the National Automobile Dealers Association (NADA). While subsequently questioning Rodney about his valuation of the marital home, the following exchange occurred:

| | |
|---|---|
| STEPIDY'S ATTORNEY: | Okay. And on the financial declaration, you say the house . . . [is] worth about [$]63,000; is that right? |
| RODNEY: | I guess. |
| STEPIDY'S ATTORNEY: | Well, I mean, that's what you put down. |
| THE COURT: | Hang on. Rule 8.05 requires the parties to exchange a financial statement that's to be signed under oath. I've sat here for the last 30 minutes and listened to various and numerous discrepancies in your 8.05. I'm going to take a break, and at 9:45[a.m.], I'm going to return, and I want that 8.05 to reflect exactly what your knowledge is. |
| RODNEY: | Okay. |
| THE COURT: | I've heard vehicles that aren't listed. I've |

5

heard checking accounts that aren't listed. Somebody hasn't done . . . [his or her] job. I'm going to give you ten minutes to do it, or I'm going to hold you in contempt. Do you understand what I'm telling you?

¶10. On Stepidy's Rule 8.05 statement, she listed the following values for the three vehicles now at issue on appeal: (1) $20,000 for the 2006 Volvo truck (VIN ending in 3635); (2) $17,000 for the 2000 Freightliner conventional trailer; and (3) $20,000 for the 2007 Transcraft trailer. Stepidy testified that she and her attorney obtained these values from NADA after inputting the vehicles' VINs and title information. While Rodney's initial Rule 8.05 statement failed to list any of the three disputed vehicles, Rodney testified that the 2006 Volvo truck (VIN ending in 3635) was inoperable and that he no longer used the 2000 Freightliner conventional trailer. Rodney further testified that he had tried and failed to sell the vehicles. As a result, Rodney claimed that both vehicles lacked any monetary value. As to the 2007 Transcraft trailer, Rodney stated that he rarely used the trailer, and he valued the item at $4,000.

¶11. Despite Rodney's testimony that he had not driven or operated the 2006 Volvo truck (VIN ending in 3635) in three to five years, Stepidy's attorney questioned him about two different tickets he had received for the vehicle within the last two years. (The first ticket was issued in August 2015, and the second ticket was issued in February 2016.) In response, Rodney stated that a mistake had occurred and that the VINs for his two 2006 Volvo trucks had been mixed up.

¶12. In rendering his bench opinion, the chancellor found that Rodney lacked credibility

6

and that his testimony had been full of inaccurate and untruthful information intended to conceal his income and assets. Based on the evidence before him, the chancellor valued each of the now disputed items among the amounts provided by Stepidy's Rule 8.05 statement and Rodney's testimony and amended the Rule 8.05 statement. Because we find the record contains sufficient evidentiary support for the chancellor's valuation of the three disputed assets, we refuse to find any manifest error. *See Dunaway v. Dunaway*, 749 So. 2d 1112, 1121 (¶28) (Miss. Ct. App. 1999) (refusing to find error where "the chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some evidentiary support in the record. . . . [and] appears to have fully explored the available proof and arrived at the best conclusions that he could . . . ."). We therefore find this assignment of error lacks merit.

## CONCLUSION

¶13. Because substantial credible evidence supports the chancellor's valuation of the marital assets at issue, we find no manifest error in the chancellor's equitable distribution of the marital estate. We therefore affirm the chancellor's judgment.

¶14. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

7